# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
        JUDGE

## <u>LETTER OPINION</u>

September 21, 2009

James M. Hazen
Law Offices of James M. Hazen
331 Newman Springs Road
Building I, Suite 143, 4th Floor
Red Bank, New Jersey  07701
        (*Attorney for Plaintiffs*)

John Michael Ettman
Poff & Bowman LLC
1600 Route 208 North
P.O. Box 24
Hawthorne, New Jersey  07507
        (*Attorneys for Defendants*)

     RE:   **Murphy, et al. v. Chambers, et al.**
              **<u>Civ. No. 08-1717 (WJM)</u>**

Dear Counsel:

This case involves a dispute over the characterization of money given by decedent John Murphy to his friend, Defendant Robert Chambers.  While Defendant Chambers characterizes this money as a gift, Plaintiffs, the executors of Murphy's estate, argue that it was a loan subject to repayment.

The instant matter before the Court involves a choice of law issue raised by the parties.  Specifically, the parties submitted pretrial briefing discussing whether the New

Jersey dead man's statute or the New York dead man's statute should be applied to testimony elicited at trial regarding conversations and transactions with John Murphy. For the reasons that follow, the Court determines that the choice of law analysis favors the application of New Jersey law.  Thus, the New Jersey dead man's statute shall govern. *See* N.J.S.A. 2A:81-2.

## I.    BACKGROUND

Understanding the issue presented by this motion requires a brief excursion in to the facts as alleged by the parties. Decedent John Murphy was a resident of New York. (Pls.' Br. 1.) In October 2006, Murphy visited his good friend, Robert Chambers, and his wife at their home in Ramsey, New Jersey.  (Defs.' Br. 5)  At some point, Defendants contend Murphy and Chambers went off on their own to look at a house for sale.  (*Id.*) While the home was out of Chamber's price range, Murphy allegedly encouraged Chambers to buy it.  (Defs.' Br. 5-6.)  Defendants contend that Murphy then explained that he wanted to give Chambers $500,000 as a gift, to help him buy and renovate the house. (Defs.' Br. 6.)

On July 25, 2007, Defendants state that Murphy again came to New Jersey and this time took Chambers to the HSBC bank in Ridgewood to open a joint bank account.  (*Id.*) From this date through mid-December 2007, Murphy deposited at least $400,000 in this account.[1] (Defs.' Br. 7.)  These deposits were wire transferred by Murphy in New York. (Pls.' Br. 1.)  In December 2007, Murphy fell ill and was hospitalized.  (Pls.' Br. 1; Defs.' Br. 7.)  Murphy never recovered from this illness and died in early January 2008.  (*Id.*)

Plaintiffs in this action are the executors of John Murphy's estate.  They characterize the money given to Defendant Chambers differently, alleging that Murphy considered the money to be a loan, payable within 10 years or when Chambers sold the house. (Pls.' Br. 1.)  Further, Plaintiffs contend that Chambers spoke to Murphy's attorney while he was still alive and acknowledged the debt, as well as a lien on his property in favor of Murphy. (Pls.' Br. 2.)  In addition, Plaintiffs note that Chambers told Murphy's nieces that the money was a loan.  (*Id.*)

Now Plaintiffs seek repayment of what they characterize as a loan on behalf of Murphy's estate; however, Chambers has refused to pay, stating that the money was a gift from Murphy.

---

[1] Plaintiffs claim that $500,000 was given to Chambers; however, Chambers says that only $400,000 was put in the account.  *See* Pls.' Br. 1; Defs.' Br. 7.

## II.    DISCUSSION

In anticipation of trial, the parties have submitted briefing to the Court on the application of the dead man's statute.  The parties disagree as to which state law applies.  Plaintiffs argue that the New York dead man's statute should apply, while Defendant Chambers contends that the New Jersey dead man's statute should govern.

Since this is a diversity case, the Court applies the choice of law rules of the forum state, New Jersey.  *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941).  To resolve conflict of law questions, New Jersey applies the "most significant relationship" test.  *See P.V. v. Camp Jaycee*, 197 N.J. 132 (2008).  The most significant relationship test is a case-by-case, qualitative analysis consisting of two steps. *See Camp Jaycee*, 197 N.J. at 143.  The first step of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists.  *See Camp Jaycee*, 197 N.J. at 143-44.  Where there is no actual conflict, the choice of law question is clearly inconsequential and the law of the forum state applies.  *See Rowe v. Hoffman-LaRoche, Inc.*, 189 N.J. 615, 621 (2007).   If a conflict does exist, the Court must move onto the second step of the test, which requires the Court to weigh the factors enumerated in the Restatement sections corresponding to the statute giving rise to the conflict.  *See Camp Jaycee*, 197 N.J. at 143-45.

Examination of the New York and New Jersey dead man's statutes reveals the two to be in conflict.  In short, the New York statute bars testimony of an interested person concerning a transaction or communication with a decedent.  *See* N.Y. C.P.L.R. 4519; *see also* 5 Robert A. Barker & Vincent C. Alexander, Evidence in New York State and Federal Courts § 6:10 ("[W]hen death ... has sealed the lips of one of the parties to the transaction, C.P.L.R. 4519 seals the lips of the surviving party.").  Applying New York law to the facts of this case, Defendant Chambers would be barred from testifying about conversations with John Murphy concerning the alleged gift, since Chambers is an interested witness.  *See Laka v. Krystek*, 261 N.Y. 126, 130 (1933) (defining an interested witness as one that "will either gain or lose by the direct legal operation and effect of the judgment, or, that the record will be legal evidence for or against him in some other action.").  Conversely, under New Jersey law, Chambers would be able to testify about those conversations, provided he first established by clear and convincing evidence that the money was a gift.  *See* N.J.S.A. 2A:81-2.  As such, the New York and New Jersey statutes appear to be in conflict.

Since an actual conflict exists, the next step of the "most significant relationship" test requires the Court to turn to the Restatement.  As the conflict *sub judice* pertains to a rule of witness competency, the relevant Restatement provision is Section 137.  Under

this section, "[t]he local law of the forum determines what witnesses are competent to testify and the considerations that may affect their credibility."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 137.  Thus, under this choice of law analysis, the New Jersey dead man's statute applies.[2]

In addition, the parties' contacts support the application of New Jersey law. As noted above, Murphy was a resident of New York and wired checks to the HSBC account from New York.  These are the only contacts alleged with New York.  Meanwhile, Defendant Chambers lives in New Jersey.  The transaction at issue was negotiated in New Jersey, made in New Jersey, and the funding placed in a bank account set up in New Jersey.  Finally, the relief sought by the estate includes an equitable lien on Defendants' New Jersey residence.  Based on these facts, it appears that New Jersey has a closer relationship to this matter than New York, again supporting the application of the New Jersey statute.

## III.    CONCLUSION

For the foregoing reasons, the Court determines that the New Jersey dead man's statute, N.J.S.A. 2A:81-2, shall be applied with regard to testimony elicited at trial concerning communications and transactions with John Murphy.  An appropriate Order accompanies this Letter Opinion.


/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

[2]  To the extent that the dead man's statute could be viewed as a rule governing the admissibility of evidence and not witness competency, the outcome is the same.  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 138 ("The local law of the forum determines the admissibility of evidence.").  Thus, New Jersey law applies.

4